***NOT FOR PUBLICATION*__

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.C., individually and on behalf of Z.P., <br><br> Plaintiff, <br><br> v. <br><br> WEST WINDSOR – PLAINSBORO REGIONAL BOARD OF EDUCATION; NEW JERSEY DEPARTMENT OF EDUCATION; ANGELICA ALLEN-MCMILLAN, Acting Commissioner of Education, in her official capacity, <br><br> Defendants. | Civil Action No. 21-13016 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff A.C., individually and on behalf of her son, Z.P. ("Plaintiff"), brought this action against Defendants West Windsor-Plainsboro Regional Board of Education (the "District"), the New Jersey Department of Education ("NJDOE"), and Angelica Allen-McMillian, in her official capacity as Acting Commissioner of Education ("Commissioner," together with the NJDOE, the "State Defendants"), alleging that Z.P. was denied a free, appropriate public education ("FAPE"). Presently before the Court is a motion, filed by the State Defendants, to dismiss Counts Five and Six of Plaintiff's Complaint, which asserts procedural violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "Act" or "IDEA"). Specifically, the State Defendants argue that (1) the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) as to the Commissioner, (2) Count Five should be dismissed because the due process hearing was impartial, and (3) Count Six does not properly allege an actionable procedural violation of the Act based on the 45-day rule.

For the reasons that follow, the State Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part. As to the Commissioner, the Complaint is dismissed without prejudice for failure to state a claim. As to the NJDOE, Count Five is dismissed without prejudice, while Count Six remains. Plaintiff is given leave to amend the Complaint consistent with the guidance provided herein, within 30 days of the Order accompanying this Opinion.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this motion, the Court takes as true all allegations of the Complaint. (*See*, *e.g.*, ECF No. 1 ("Compl.")).

Generally, Plaintiff seeks an Order reversing a final decision issued on March 30, 2021 (the "Final Decision"), by the Hon. Carl V. Buck, III, A.L.J. (the "ALJ"), in which the ALJ concluded that the District's determinations in January 2019 and May 2019, that Z.P. was not eligible for special education programs and services, were not a denial of a FAPE, and further, that the August 2019 and December 2019 Individual Education Programs ("IEPs") developed and implemented by the District provided Z.P. a FAPE.

Z.P. is a five-year-old student in the District, who is purportedly eligible for special education and related services under the Act. (Compl., ¶¶ 14, 16). According to Plaintiff, Z.P. has been diagnosed with multiple disabilities, including Autism Spectrum Disorder, life-threatening asthma, and food allergies. (*Id.* at ¶ 54.) Indeed, as a toddler, Plaintiff alleges that Z.P. received Early Intervention Services ("EI") four times per week which included speech-language therapy, occupational therapy, and developmental intervention sessions specifically designed to work on his social, emotional, and behavioral skills. (*Id.* at ¶¶ 56-58.)

Plaintiff alleges that in January 2019, the District held an Initial Identification and Evaluation Planning meeting to determine whether an evaluation of Z.P. was warranted to assess his eligibility for special education services. (*Id.* at ¶ 84.) Prior to the meeting, Plaintiff alleges

2

that she provided the District with copies of reports of Autism and Speech-Language Evaluations performed at the Children's Hospital of Philadelphia in December 2018, as well as letters from Z.P.'s teachers at a preschool daycare center located in West Windsor, New Jersey. (*Id.* at ¶ 83.) According to Plaintiff, the District's personnel performed a "structured observation" during which time Z.P. interacted one-on-one with members of the District's Child Study Team ("CST"). (*Id.* at ¶ 85.) Following the structured observation session, the District determined that Z.P. was not eligible for special education, and related services, as a preschool child with a disability, and therefore, no further evaluation of Z.P. was necessary. (*Id.* at ¶ 93.)

In February 2019, however, Plaintiff alleges that she provided the District with additional documentation, including private evaluations purportedly demonstrating Z.P.'s educational needs and his deficiencies related to speech and language. (*Id.* at ¶ 99.) Also, in February 2019, Plaintiff filed a mediation-only request with the New Jersey Department of Education's Office of Special Education Policy and Dispute Resolution ("SPDR"), seeking reconsideration of the District's conclusion that Z.P. was ineligible for special education and related services. That request was later withdrawn, however, when the District agreed to evaluate Z.P. (*Id.* at ¶¶ 25, 106.)

On three occasions in March and April 2019, the District evaluated Z.P. (*Id.* at ¶ 25.) According to Plaintiff, the District's CST determined that "Z.P. did not have a disability that adversely affects his educational performance, but failed to give the Parent the required notice that they found him ineligible for special education and related services at that time." (*Id.* at ¶ 26.) In response, Plaintiff, acting *pro se* at the time, filed a second mediation request on May 29, 2019, asking that Z.P. be deemed eligible for special education services.[1] (*Id.* at ¶ 27.) Approximately

---

[1] Plaintiff alleges that in early June 2019, she retained counsel, and around that same time, the parties agreed to convert Plaintiff's mediation-only request to a petition for due process, waived the 30-day resolution period, and had the matter immediately transmitted to the Office of Administrative Law for adjudication. (Compl., at ¶¶ 155-56.)

one month later, the parties appeared before the Hon. Dean J. Buono, A.L.J., who advised the parties that the first date available for a hearing was in March 2020. (*Id.* at ¶¶ 28-29.) At that time, the District agreed to reconsider its eligibility determination and conduct a second observation of Z.P. (*Id.* at ¶ 28.)

Shortly thereafter, in August 2019, the District found Z.P. eligible for special education services and proposed an IEP. (*Id.* at ¶ 30.) Although Plaintiff provided her written consent for the IEP, she purportedly disagreed with the District's denial of speech services for Z.P. (*Id.* at ¶ 31.) Because the parties could not agree on the issue of speech-language services, no settlement was reached, and the matter was assigned to the Hon. Carl V. Buck, III, A.L.J., in September 2019. At a status conference in October 2019, the District argued that Plaintiff's petition was moot based on the IEP; however, Plaintiff highlighted that Z.P.'s entitlement to speech services remained. (*Id.* at ¶ 33.) Eventually, the District agreed to conduct a speech evaluation within thirty days. (*Id.* at ¶ 34.) During those thirty days, Plaintiff alleges that she asked the District to develop a Behavioral Intervention Plan ("BIP"), but the District refused. (*Id.* at ¶ 35.) Thus, in November 2019, Plaintiff filed for emergent relief, seeking an order requiring the District to provide Z.P. with speech-language services and develop a BIP. (*Id.* at ¶ 36.) The District filed a cross-application to compel Plaintiff's consent for a full speech evaluation. (*Id.* at ¶ 37.) Plaintiff consented to the evaluation and the ALJ held a conference on January 27, 2020, at which time Plaintiff requested permission from the ALJ, which he granted, to amend her petition for due process to include additional relief. (*Id.* at ¶¶ 43-44.)

Due to the COVID-19 pandemic, the due process hearing was postponed, with the parties eventually agreeing to proceed via videoconference for seven days between May 21, 2020 and August 7, 2020. (*Id.* at ¶¶ 32, 48.) On March 30, 2021, the ALJ issued his final decision, denying

4

Plaintiff's requested relief except with regard to a limited transportation issue. (*Id.* at ¶ 52.) According to Plaintiff, the Final Decision was substantively deficient because it failed to cite portions of federal and state law that govern the District's obligations to identify children with disabilities, contained incorrect factual findings, improperly shifted the burden of proof to Plaintiff, and was a "a near verbatim copy of the District's post-hearing brief." (*Id.* at ¶¶ 13, 359, 367.)

On June 27, 2021, Plaintiff filed this action seeking a reversal of the Final Decision. (Compl., ¶ 2). Her Complaint asserts two counts against the NJDOE and no specific causes of action against the Commissioner.  In Count Five, Plaintiff claims the NJDOE violated her right to an impartial due process hearing, and Count Six raises a procedural violation of the Act based on the time that passed during the due process proceedings. (*Id.* at ¶¶ 354-369, 375.)

## II.  LEGAL STANDARD

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).  In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show

5

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

### III. DISCUSSION

#### A. Dismissal of the Commissioner

At the outset, the State Defendants argue that the Complaint should be dismissed as to the Commissioner, because Plaintiff fails to state a claim against her. In opposition, Plaintiff ignores this glaring deficiency, arguing only that the Commissioner is a "proper party to this action," because the Complaint names her in her official capacity.

I agree with the State Defendants' position. In addition to failing to set forth any specific cause of action against the Commissioner, Plaintiff's 68-page, 381 paragraph Complaint does not include a single factual allegation involving the Commissioner. *Radocesky v. Munley*, 247 F.

6

App'x 363, 366 n.2 (3d Cir. 2007) (dismissing defendants based on a finding that the complaint did not direct any allegations against them); *McKnight v. Camden Cty. Prosecutor's Off.*, No. 12-1683, 2012 WL 5880326, at *3 (D.N.J. Nov. 20, 2012) (same); *Jones v. Warden Charles Ellis, et al.*, No. 21-13625, 2021 WL 5015921, at *1 (D.N.J. Oct. 28, 2021) (same). Rather, Plaintiff merely alleges that the Commissioner is the "state officer in charge of the NJDOE" and that she is named in this lawsuit in her official capacity. (Compl., ¶¶ 22-23.) This is insufficient to sustain any claim against the Commissioner, herself.

Rather, as those claims stand now, they are duplicative of the claims brought against the NJDOE. Where individual defendants are named in their official capacities, only the liability of the agency which the officers represent is really at issue. *See Brandon v. Holt*, 469 U.S. 464, 471–73 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638 n. 18 (1980); *Melo v. Hafer*, 912 F.2d 628 (3d Cir. 1990); *see also McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002) (dismissing claims against individual officers of the defendant school district where those claims were duplicative of the claims brought against the local educational agency); *I.S. by & through Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 610 (N.D.N.Y. 2020) (same), *reconsideration denied*, 19-0513, 2020 WL 6689115 (N.D.N.Y. Nov. 13, 2020). Therefore, the Court dismisses the Complaint against the Commissioner without prejudice. However, to the extent that Plaintiff has any claims <u>directly</u> against the Commissioner, in her personal capacity, that would not be duplicative of the claims asserted against the NJDOE, she may amend her Complaint.

B.    <u>Violation of Plaintiff's Right to an Impartial Due Process Hearing</u>

Next, the NJDOE seeks dismissal of Count Five, in which Plaintiff claims a violation of her right to an impartial due process hearing. The NJDOE argues that Count Five should be

7

dismissed because (1) the due process hearing was impartial, (2) the Complaint fails to allege the ALJ was unqualified to preside over the hearing, and (3) the NJDOE is not a property party to Plaintiff's appeal of the Final Decision.[2] The NJDOE contends that Plaintiff fails to plead how the NJDOE violated the Act. The NJDOE further contends that Count Five simply expresses Plaintiff's dissatisfaction with the Final Decision, and in that connection, the "mere disagreement with a hearing officer's decision does not render State Defendants liable for violations of the [Act]." (State Defendants' Reply Br., 6.) In response, Plaintiff argues that the Complaint sufficiently pleads a violation of her right to an impartial due process hearing based on allegations that the ALJ was incompetent, lacking the knowledge required to preside over the petition. (Pl. Opp. Br., 18-19.) I agree with the NJDOE's position. Because the Complaint alleges only that the ALJ committed purported legal errors, and does not challenge the ALJ's qualifications, nor allege any bias, Plaintiff has failed to state a claim for violation of her right to an impartial due process hearing under the Act.

The Act requires that every child with a disability receive a free appropriate public education from their public school if that school receives federal funding under the IDEA. 20

---

[2] Despite the NJDOE's argument to the contrary, I find that the NJDOE is, in fact, a proper party to this lawsuit. Indeed, the IDEA contemplates that it is the State Educational Agency, *i.e.*, the NJDOE, that is responsible for making sure that there are fair and impartial procedures in place to handle any due process petition. 20 U.S.C. § 1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); 20 U.S.C. § 1415(e)(1) ("Any State educational agency or local educational agency that receives assistance under this subchapter shall ensure that procedures are established and implemented to allow parties to disputes involving any matter."); s*ee also J.A. v. Monroe Twp. Bd. of Educ.*, 20-09498, 2022 WL 970194, at *8 (D.N.J. Mar. 31, 2022) (denying the NJDOE's motion to dismiss claims for, *inter alia*, failure to provide impartial hearing and failure to train administrative law judges); *M.D. v. Vineland City Bd. of Educ.*, 19-12154, 2022 WL 844423, at *5 (D.N.J. Mar. 22, 2022) (same); *C.P. v. New Jersey Dep't of Educ.*, 19-12807, 2020 WL 2611572, at *8 (D.N.J. May 22, 2020) (denying the NJDOE's motion to dismiss claims for, *inter alia*, violation of the 45-day rule); *K.K.-M. v. N.J. Dep't of Educ.*, 17-11579, 2021 WL 3508805, at *5 (D.N.J. Aug. 10, 2021) (denying the NJDOE's motion to dismiss the plaintiff's claim for failure to enforce the 45-day rule).

U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria. 20 U.S.C. § 1401(9). The Act also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" with which participating public schools must comply. *Id.* at § 1412(6)(A); *id.* at § 1415(a). One such procedural safeguard provides standards for adjudicating disputes on whether a school has adequately provided a FAPE. Pursuant to these requirements, disputes begin with the filing of a "due process petition" or "due process complaint." Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* at § 1415(b)(6). The Act contemplates that it is the State Educational Agency, here the NJDOE, that is responsible for making sure that there are fair and impartial procedures in place to handle any due process petition. *Id.* at § 1415 (f)(1)(A); *id.* at § 1415(e)(1).

Moreover, as part of the Act's impartiality requirement, it proscribes certain qualifications a hearing officer should possess. 20 U.S.C. § 1415(f). In addition to not being employed by the State educational agency, or the local educational agency involved in the education or care of the child, the Act requires that hearing officer (1) "possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts;" (2) "possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice;" and (3)

9

"possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice." *Id.* at § 1415(f)(3)(A).

Plaintiff does not allege that the ALJ was employed by the State educational agency or local educational agency involved in Z.P.'s education, nor does she allege that the ALJ acted with any bias in deciding her petition. *See Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992) (alleging that the hearing officer had an economic stake in the outcome of a hearing); *Cavanagh v. Grasmick*, 75 F. Supp. 2d 446, 461 (D. Md. 1999) (dismissing the plaintiff's lack of impartiality claim where "nothing in the record as a whole disclose[d] that either [administrative law judge] was an employee of the [state educational agency] or [local educational agency] involved in the education of [the plaintiff], had personal or professional interests, or any bias stemming from an extrajudicial source, that affected their objectivity and impartiality."); *Y.A. v. New York City Dep't of Educ.*, 15-05790, 2016 WL 5811843, at *19 (S.D.N.Y. Sept. 21, 2016) (noting that an independent hearing officer's "periodic refusal to allow testimony outside of the scope of the due process complaint does not indicate bias").

Rather, the basis for Plaintiff's claim in Count Five appears to rest solely on allegations that the ALJ failed to correctly decide the issues underlying the due process hearing. Tellingly, however, Plaintiff does not provide, nor could the Court uncover, any cases that found a cognizable claim for violation of a plaintiff's right to an impartial due process hearing based on an independent hearing officers' inadequate understanding of the legal issue or standards concerning a particular case. In support of Plaintiff's claim, here, she does not rely on any factual allegations challenging the ALJ's educational background, qualifications, familiarity, or experience with due process hearings under the IDEA.[3] Instead, the Complaint references

---

[3] I note that the Complaint does allege the ALJ's Final Decision demonstrates a lack of understanding and knowledge as to the structure and process of the IDEA. In this regard, Plaintiff alleges that the IDEA

numerous garden-variety evidentiary, procedural, and legal determinations made by the ALJ, which, according to Plaintiff, were wrongly decided. (Pl. Opp. Br., 17-18) ("Plaintiff's Complaint pleads facts that demonstrate the ALJ failed to address and dispose of a critical issue in Plaintiffs' due process petition[…]; improperly shifted the burden of proof and persuasion onto the Plaintiffs[…]; lacked sufficient, competent and credible evidence to support his findings and disregarded virtually all of the Plaintiff's extrinsic evidence[…]. Based on the statute, the Court finds that mere legal errors cannot sustain a violation of a plaintiff's right to an impartial due process hearing. Indeed, if this were the case, then every successful appeal of a final decision pursuant to the Act would also result in a due process violation. This cannot be the intent of the statute. Rather, a plaintiff asserting a claim under 20 U.S.C. § 1415(f), based on the hearing officer's purported lack of knowledge and understanding, must allege, at minimum, that the hearing officer was unqualified, did not receive appropriate training, or displayed a pattern of incompetency so egregious that it violated the plaintiff's right to an impartial hearing. To be clear, to the extent that a plaintiff seeks to attack the findings of, or basis for, a final decision, he or she may appeal the ruling—which Plaintiff, here, has done in Count One.

    Mindful of this distinction, I turn to the specific allegations of the instant case, finding that the purported legal errors relied on by Plaintiff are insufficient to assert a violation of her right to

---

has "very specific steps in its comprehensive scheme for ensuring that children with disabilities are provided a free appropriate public education," including referral, identification, evaluation, eligibility determination, and the development of an IEP to meet the child's unique needs. (*Id.* at ¶ 291.) Further, each of these steps has "defined timelines, require specific participants, and explicit written notice provisions." (*Id.*) According to the Complaint, however, the ALJ's Final Decision suggests a "lack of understanding" of these steps and how the steps are to be completed. (*Id.*) For example, the Complaint highlights that an identification meeting is not the same thing as an IEP meeting and requires different participants, yet the ALJ's Final Decision purportedly describes almost all meetings that Plaintiff attended with District personnel as "IEP meetings." (*Id.* at ¶ 292-93.) While I appreciate this nuance, I am not persuaded that this allegation is sufficient to survive dismissal, s*ee infra*.

11

an impartial due process hearing. Indeed, the Complaint first challenges the ALJ's treatment and consideration of certain evidence, including testimony of Dr. Laura Nash and Dr. Lindsay Hilsen. As to Dr. Nash, who became Z.P.'s case manager, she purportedly testified that she was only "vaguely" aware of the Autism Program Quality Indicators ("APQI") published by the New Jersey Department of Education, and she "resisted agreeing with even the most basic characteristics of children with an Autism Spectrum Disorder – that they have difficulties in socialization, communication, attention, and imitation." (*Id.* at ¶ 286.) The Complaint alleges, however, that "[t]he ALJ's opinion never mentions the detailed questioning of the case manager about the APQI[.]" (*Id.* at ¶ 287.) With respect to Dr. Hilsen, who qualified as an expert in special education and Applied Behavior Analysis, Plaintiff alleges that she "testified that preschool students with [Autism Spectrum Disorder] are usually very comfortable interacting with adults, but need intense instruction to be able to interact with peers." (*Id.* at ¶ 289.) According to Plaintiff, however, that testimony was "not considered in the ALJ's opinion." (*Id.*)

In addition, Plaintiff relies on allegations that the ALJ failed to "properly adjudicate two applications for Emergent Relief Plaintiff filed during the pendency of the due process matter;" "improperly shifted the burden of proof and persuasion onto the Plaintiffs;" and generally lacked sufficient, competent, and credible evidence to support the findings of the Final Decision as evidence that the NJDOE is liable for a violation of her right to an impartial due process hearing. (Compl., ¶¶ 13, 52, 222, 278, 290, 311, 358-59, 366.) Again, these allegations concern the ALJ's decision-making and legal judgments, not his experience, knowledge, or understanding of the IDEA. While the Court may eventually agree with Plaintiff that the ALJ erred in his Final Decision, the errors, as pled, do not constitute a violation of Plaintiff's right to an impartial hearing.

Finally, Plaintiff alleges that "the ALJ's recitation of testimony in this case is almost entirely a verbatim copy of the District's post-hearing brief." (*Id.* at ¶ 284, 317, 367.) While this allegation is certainly troubling, Plaintiff provides no support for its position that this, alone, rises to the level of a due process violation. In fact, the two cases relied on by Plaintiff, *F.H. v. W. Morris Reg'l High Sch. Bd. of Educ.*, 19-14465, 2020 WL 7223600, at *4 (D.N.J. Dec. 8, 2020) and *Livingston Bd. of Educ. v. D.A. on behalf of D.A.*, 17-8802, 2021 WL 3706723, at *1 (D.N.J. Aug. 20, 2021), tend to support this Court's finding as to Count Five. Citing *F.H.* and *Livingston Bd. of Educ.*, Plaintiff argues that "[r]ecent decisions from this Court have lamented ALJ decisions that failed to analyze parents' claims, acknowledge parents' arguments, and made summary conclusions without providing legal reasoning or analysis to support those conclusions." Plaintiff is correct that in both *F.H.* and *Livingston Bd. of Educ.* the court ordered the matters be remanded so that the administrative law judges could reconsider previously overlooked arguments made by the respective parents. But, those cases did not contain any claims related to a lack of impartiality, including whether the particular ALJ possessed the knowledge or ability to resolve the issues. Thus, like the courts in *F.H.* and *Livingston Bd. of Educ.*, the Court, here, will address Plaintiff's disagreement with the ALJ's decision in connection with Count One of the Complaint against the District, which seeks reversal of the Final Decision. Accordingly, Count Five is dismissed without prejudice.

  C. <u>Violation of the 45-Day Rule</u>

Next, the NJDOE contends that Count Six should be dismissed. In Count Six, Plaintiff claims that her due process proceeding took more than 45 days to conclude in violation of the Act. *See* 34 C.F.R. § 300.515(a) (requiring that in a due process proceeding a "final decision must be rendered 45 calendar days after the conclusion of the resolution period …."). According to the

NJDOE, no violation of the Act occurred, however, because the 45-day rule was "tolled by multiple extensions sought by the parties, the filing of an amended petition, and extensive motion practice, including a motion to compel consent for a full speech evaluation." (State Defendants Reply Br., 11.) Further, the NJDOE claims that even if the 45-day rule was violated, Plaintiff has not sufficiently pled substantive harm resulting from the actions of the NJDOE.

Beginning with the date the due process complaint is filed, the parties have thirty days within which to settle or otherwise resolve the dispute to the satisfaction of the parent and child. *See* 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b). This period is referred to as the "resolution period." If the case is not resolved during the resolution period, it may proceed to a hearing. Congress has called these "due process hearings." In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" in the Office of Administrative Law. N.J.A.C. 6A:14-2.7(a). "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence." 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); *see* N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge ... after the conclusion of the resolution period"). Once the 30-day resolution period ends, federal regulations require that due process petitions be decided by hearing officers within 45 days, <u>unless either party requests specific adjournments</u>. 34 C.F.R. § 300.515(a) (emphasis added) (States receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) ... (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties."). New Jersey's Administrative Code contains a similar requirement. N.J.A.C.

14

6A:14-2.7(j) ("[a] final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]").

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party," which will effectively toll the 45-day period within which a decision must be entered. *See* N.J.A.C. 6A:14-2.7(j) (45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a] hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party."). No other delays are contemplated. Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period. 34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).

Here, the Complaint alleges that the NJDOE "failed to ensure the timeliness in special education due process hearings are met, as required by federal and state law." (Compl., ¶ 374) (citing 20 U.S.C. §1415(f); N.J.S.A. 52:14B-10; N.J.A.C. 6A:14-2.7.) Specifically, Plaintiff alleges that "[f]rom the time the mediation-only request was converted to a due process petition and transmitted to the Office of Administrative Law on June 10, 2019, until a final decision was reached, on March 30, 2021, 660 days elapsed, including 144 days between the close of the record on November 7, 2020[,] and the issuance of the final decision on March 30, 2021." (*Id.* at ¶ 375.) Although the NJDOE is correct that the 45-day clock contemplated by the Act may be tolled, its motion to dismiss must be denied, at this time, because resolution of Count Six hinges on evidence undeveloped in the current record. In order to resolve this claim, the Court must consider the record before the ALJ, including but not limited to evidence of specific adjournment requests made by the parties, if any, and the ALJ's responses to those requests. If the record reflects that the extensive

15

delays alleged by Plaintiff were related to "specific adjournments," that would certainly undermine Plaintiff's claim. But, at this early stage of the litigation, without any documentary evidence to support the NJDOE's position, the truth of Plaintiff's allegations must be presumed.

The NJDOE also argues that even if the 45-day rule was violated, Plaintiff has not sufficiently pled substantive harm on the part of the NJDOE, and therefore, Count Six should be dismissed. That argument is unpersuasive. It is generally accepted that "a significant delay in providing a due process hearing – one measured in months beyond expiration of the 45 Day Rule - constitutes a substantive as opposed to procedural harm, and therefore, constitutes denial of a FAPE." *C.P. v. New Jersey Dep't of Educ.*, 19-12807, 2020 WL 2611572, at *8 (D.N.J. May 22, 2020) (denying motion to dismiss where the complaint sufficiently pled a claim for violation of 45-day rule); *see also Blackman v. D.C.*, 382 F. Supp. 2d 3, 9 (D.D.C. 2005) (granting the plaintiffs' motion for preliminary injunction where the "earliest conceivable date" a decision could have issued would have been 158 days after their initial request for a hearing—an "unquestionabl[e] […] denial of [the plaintiffs'] right to a [FAPE]"); *Miller v. Monroe Sch. Dist.*, 131 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015) (finding that a student was denied a FAPE where it was "142 days past the deadline for issuing a decision, nearly three times longer than the regulations contemplate" and "[d]uring this time, [the child's] education was in flux [and] [i]t was unclear whether the [d]istrict provided him an appropriate placement[.]"); *Dep't of Educ. v. T.G.*, No. 10-362, 2011 WL 816808, at *9 (D. Haw. Feb. 28, 2011) (finding that a school district's failure to "convene a due process hearing[ ] and issue [an] administrative decision within the timelines established ... violated [the student's] substantive rights"); *E.M. v. Pajaro Valley Unified School District*, No. 06-4694, 2006 WL 3507926, at *6 (N.D. Cal. Dec. 5, 2006) (recognizing that while minor delays in reaching decisions on due process petitions may not rise to denial of a FAPE,

16

more significant delays might be actionable). Indeed, in *C.P. v. New Jersey Dep't of Educ.*, the court found that one group of the plaintiffs had asserted a plausible claim that the delays they experienced "crossed the line from minor, non-actionable delays to delays so significant that they deprived disabled students and their parents of the substantive rights guaranteed to them by the IDEA." 2020 WL 2611572 at *8. There, the court noted that the plaintiffs had "suffered delays ranging from 30 days beyond the 45 Day Rule on the low side to 791 days on the high side." *Id.* at *8-9.

As noted above, *supra*, Plaintiff alleges a 660 day, or 21-month, delay in violation of the IDEA's 45-day rule. Taking the allegations of the Complaint as true, such a delay—nearly <u>fifteen</u> times longer than the regulations permit—is sufficient to plead substantive harm based on the passage of time. Accordingly, the NJDOE's motion to dismiss Count Six is denied without prejudice.[4]

## IV.  **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part. As to the Commissioner, the Complaint is dismissed without prejudice for failure to state a claim. As to the NJDOE, Count Five is dismissed without prejudice, while Count Six

---

[4] In addition, the NJDOE argues that while Plaintiff seeks compensatory relief in connection with Counts Five and Six, *see* Compl., ¶¶ 369, 377, such relief is not an appropriate remedy for a procedural violation of the Act. (Def. Opp., 28) (citing *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59 (3d Cir. 2010)) (finding that a purely procedural violation of the IDEA can typically only justify prospective injunctive relief to ensure future compliance with IDEA procedures, not compensatory relief or tuition reimbursement). That said, a procedural violation may rise to a substantive violation justifying compensatory education or tuition reimbursement, but only where plaintiffs can show that procedural defects caused such substantial harm that a FAPE was denied. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d at 66–67. As found in this Opinion, however, Plaintiff has sufficiently alleged that the nature of the procedural violation, *i.e.*, the substantial delay in resolving her due process petition, was so severe, and so substantial that, if proven, would rise to the level of a substantive violation such that compensatory relief would be appropriate.

remains. Plaintiff is given leave to amend the Complaint consistent with the guidance provided herein, within 30 days of the Order accompanying this Opinion.

Dated: May 10, 2022                                      /s/ Freda L. Wolfson
                                                         Freda L. Wolfson
                                                         U.S. Chief District Judge